United States District Court
Southern District of Texas
**ENTERED**
October 09, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| REYNALDO LERMA-PICHARDO, Movant | § § § | |
| v. | § § | Civil Action No. 1:18-cv-04 (Criminal Action No. 1:15-cr-1106-2) |
| UNITED STATES OF AMERICA, Respondent | § § § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Reynaldo Lerma-Pichardo has filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter, Lerma-Pichardo's "Motion" or "§ 2255 Motion"). Dkt. No. 1. In support of this Motion, he has filed a "Supplement[al] Motion," and a "Motion for Discovery and Appointment of Counsel to Effectuate Discovery" (hereinafter, collectively referred to as Lerma-Pichardo's "Motions in Support"). Dkt. Nos. 9 and 20. The Government has filed a combined Motion for Summary Judgment and Response to Lerma-Pichardo's § 2255 Motion (hereinafter referred to as the Government's "Motion" or "Motion for Summary Judgment"). Dkt. No. 19. For the reasons provided below, it is recommended that the Court: (1) **GRANT** the Government's Motion for Summary Judgment; (2) **DENY** the requests for relief contained in Lerma-Pichardo's § 2255 Motion and Motions in Support; (3) **DECLINE** to issue a certificate of appealability; and (4) **DIRECT** the Clerk of the Court to close this case.

## I. Jurisdiction

The Court has jurisdiction over Lerma-Pichardo's § 2255 Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background

On October 25, 2016, pursuant to a plea agreement, Lerma-Pichardo pleaded guilty to an eight-count indictment charging him with crimes involving the transporting of aliens within the United States for private financial gain. *See United States of America v. Reynaldo Lerma-Pichardo*, No. 1:15-cr-1106-2, Minute Entry dated October 25, 2016, Dkt. No. 49, and Dkt. No. 229 at 1.[1] More specifically, Lerma-Pichardo pleaded guilty to the following criminal counts:

| | |
|---|---|
| Count 1: | Conspiracy to transport and harbor certain undocumented aliens within the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(1), and § 1324(a)(1)(B)(i). |
| Counts 2-4: | Harboring certain undocumented aliens within the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)(1), and § 1324(a)(1)(B)(i)(II). |
| Counts 5-7: | Transporting certain undocumented aliens within the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)(1), § 1324(a)(1)(A)(v)(II), and § 1324(a)(1)(B)(i). |
| Count 8: | Hostage taking in violation of 18 U.S.C. § 2, and § 1203. |

*Id.*

---

[1] Hereinafter, Lerma-Pichardo's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

On February 15, 2017, United States District Judge Rolando Olvera sentenced Lerma-Pichardo to 235 months of imprisonment for Count 8, and 120 months of imprisonment for each of Counts 1-7, with all sentences to run concurrently.  CR Dkt. No. 239 at 1-3.  Judge Olvera also imposed a five-year supervised release term for Count 8, and a 3-year supervised release term for each of Counts 1-7, with all terms of supervision to run concurrently.  *Id.* at 4.  As a special condition of his supervised release, Lerma-Pichardo was ordered to: (1) participate in a drug and/or alcohol treatment program; (2) enroll in an educational program designed to result in his obtaining a high school diploma or its equivalent, if he had not already completed such a program during his imprisonment; and (3) have no contact with his co-defendant, Juan Carlos Meza-Hinojosa.  *Id.* at 3-5.  He was additionally ordered to pay a special assessment of $800.00.  *Id.* at 6.  Judgment was entered on February 24, 2017.  *Id.*

Lerma-Pichardo filed a timely notice of appeal on March 9, 2017.  CR Dkt. No. 243.  The Government opposed his appeal by moving for specific performance of the waiver of appeal Lerma-Pichardo agreed to when he signed his plea agreement.  *See* CR Dkt. No. 185 at 5, ¶ 11 ("The defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed, or the manner in which the sentence was determined."); Dkt. No. 19 at 4 (referencing the Government's motion to dismiss).  The Court of Appeals for the Fifth Circuit granted the Government's motion and dismissed Lerma-Pichardo's appeal on September 27, 2017.  CR Dkt. No.

265. Lerma-Pichardo did not file a petition for certiorari with the United States Supreme Court. Dkt. No. 1 at 2.

Lerma-Pichardo filed his instant timely § 2255 Motion on December 26, 2017. Dkt. No. 1 at 13.[2] Subsequently, he filed two Motions in Support. Dkt. Nos. 9 and 20. In brief, Lerma-Pichardo's Motion and Motions in Support argue that his trial counsel, Michael Edward Benton, deprived him of effective assistance of counsel by inducing him to plead guilty with false promises. *See* Dkt. No. 1 at 4-5, 11; Dkt. No. 9 at 1-4; Dkt. No. 20 at 1-3.[3]

The Government filed its Motion for Summary Judgment on April 20, 2018. Dkt. No. 19. Finding that summary judgment could not issue on the record before it, the Court ordered Benton to respond to Lerma-Pichardo's allegations and held an evidentiary hearing. *See* Dkt. No. 21 (Court's Order); Dkt. No. 27 (Affidavit of Michael Edward Benton); Dkt. No. 45 (Transcript of evidentiary hearing). The issues

---

[2] Lerma-Pichardo indicates that he gave his § 2255 Motion to prison authorities for mailing on December 26, 2017. Dkt. No. 1 at 13. The Court will consider his Motion filed on that date. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

[3] As an aside, Lerma-Pichardo did not waive his right to bring his instant claims by signing his plea agreement. Lerma-Pichardo's plea agreement explicitly states that "[n]othing in the foregoing waiver of appellate and collateral review of rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum." *United States v. Lerma Pichardo*, Criminal No. B-15-1106, Dkt. No. 185 at 5. *See also United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002) ("[A] defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel.") (citing *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995)).

presented in Lerma-Pichardo's § 2255 Motion and Motions in Support are, thus, now fully briefed and ripe for review.

### III. Legal Standards

**28 U.S.C. § 2255.**  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**Ineffective Assistance of Counsel.**  The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  Even though sentencing does not concern the

defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler*, 566 U.S. 156. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, at 210

(5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins,* 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

Lerma-Pichardo asserts that he would not have pleaded guilty, but for promises made to him by his defense counsel, Michael Edward Benton. He states that Benton told him that, if he entered a guilty plea, he would not receive a sentence in excess of 10 years imprisonment and the Government would dismiss "the hostage taking charge against his mother." Dkt. No. 1 at 4-5. ("Mr. Lerma's attorney repeatedly assured him that he would not be sentenced to any more than 10 yrs, regardless of what the court said at the guilty plea hearing or at the sentencing hearing.").[4] Lerma-Pichardo contends that, "had he known that his attorney did not have a 10 yr. deal in place for him[,]" he "would have insisted on exercising his right

---

[4] The Government dismissed the hostage-taking charge against Lerma-Pichardo's mother, Leticia Lerma-Pichardo. *See United States v. Leticia Lerma-Pichardo*, 1:15-cr-1106-1, Dkt. No. 183 at 1-2; Dkt. No. 225 at 1-2; Dkt. No. 261 at 33. Accordingly, the Court need not address Lerma-Pichardo's claim that his guilty plea was partially induced by the Government's promise regarding his mother because, to the extent a promise was made, it appears to have been kept.

to a trial by jury, and his right to confront each of his accusers." *Id.* at 5.  He states that he would have insisted on going to trial, in part, because he is innocent of the hostage-taking charges. Dkt. No. 20 at 3.[5]

In his first Motion in Support, Lerma-Pichardo elaborates upon his "sole ground for relief." Dkt. No. 9 at 1.  He states that, both before and after he pleaded guilty, Benton repeatedly assured him that he would not be sentenced to more than 10 years (120 months) of imprisonment.  *Id.* at 1-3.  He contends that Benton continued to make these assurances, even after it became clear that the Government was going to seek a sentencing enhancement due to allegations that he had sexually assaulted a hostage.  *Id.* at 2.

> Later in the Movant's stay at the Detention Center, The Movant called Mr. Benton from the Inmate Pay Phone in the jail.  The Movant asked Mr. Benton about the plea deal offered by the government.  Mr. Benton informed the Movant that the government was claiming to have located a witness who alleged she was sexually assaulted during her ordeal and that the government was going to ask for a 2 level enhancement for that relevant conduct.  After the Movant expressed concern and anger at the allegation, and at the thought of possibly losing his plea deal, Mr. Benton, on that jail phone, told the Movant not to worry about it, that it wouldn't happen, and that it would not affect the 120 month plea deal.

*Id.* (errors in original).

Lerma-Pichardo avers that, after he received his 235-month sentence for hostage taking, Benton expressed surprise and promised "that the government would send someone to talk to [him] to straighten things out." Dkt. No. 9 at 2.  Lerma-

---

[5] Although Lerma-Pichardo states that he is innocent of the Count-8 hostage-taking charges, he does not elaborate upon this assertion or provide any factual or evidentiary support for it. Therefore, to the extent that he meant to assert actual innocence as an independent claim, the claim is subject to dismissal on the grounds that is conclusory and belied by the record.

Pichardo claims that Benton made this promise on two separate occasions, but nothing was ever done. *Id.* at 3. Lerma-Pichardo states that he used jail telephones to converse with Benton, and that the recordings of those calls will support his claims. *Id.* at 3.[6] He also contends that Benton told him that the Court erred in applying a two-level enhancement to his sentence. Dkt. No. 20 at 3.

In his second Motion in Support, Lerma-Pichardo suggests that, while in court, he may have falsely stated that he was not induced into pleading guilty with promises. Dkt. No. 20 at 1-2. He implies that, if he lied under oath about the subject, he did so pursuant to coaching from Benton. *Id.* He indicates that the admonishments he received from the Court, and his responses to questions, were nothing more than "play acting" designed to hide the fact that the Government had promised him a lower sentence. *Id.* Regardless of what was said in court, he believed that his sentence would be limited to no more than 10 years. *Id.* at 2. Now that he has received a longer sentence, he would like to withdraw his guilty plea and proceed to trial. *Id.* at 3.

As noted above, the Government responded to Lerma-Pichardo's claims here by filing a Motion for Summary Judgment. Dkt. No. 19. Finding that summary judgment could not issue on the record before it, the Court ordered Benton to file a

---

[6] To the extent that Lerma-Pichardo's first Motion in Support seeks appointment of counsel and discovery, the Court granted his requests, in part, by appointing counsel to represent him at the evidentiary hearing and allowing his counsel time to obtain the recordings of the jail telephone calls he references. *See* Dkt. Nos. 29, 37-38. To the extent his first Motion in Support is not moot, however, it is recommended that the Motion be denied for the reasons discussed below.

signed, sworn affidavit responding to Lerma-Pichardo's claims. Dkt. No. 21. The Court then scheduled an evidentiary hearing to allow for further factual development of the record. *See* Dkt. No. 29. Prior to the hearing, the Court appointed attorney Eduardo T. Ortiz to represent Lerma-Pichardo. *Id.* The Court also allowed the parties additional time to obtain and review recordings of the jail telephone calls referenced by Lerma-Pichardo in support of his claims. Dkt. Nos. 37-38, 40-41.

The evidence contained in the record and produced in response to Lerma-Pichardo's allegations fails to support his claims. To begin, Benton's signed, sworn affidavit (hereinafter, Benton's "Affidavit") explicitly disputes Lerma-Pichardo's characterization of events. Dkt. No. 27. In relevant part, Benton's Affidavit states:

> At no time during my representation of Mr. Lerma did I communicate to him, nor lead him to believe, that a plea agreement of 120 months, or 10 years, was reached with the Government, specifically in regards to Count 8 of the indictment.

> It was part of the plea agreement that the hostage taking charge against Mr. Lerma's mother, Leticia Lerma-Pichardo, would be dismissed. To my knowledge that charge was in fact dismissed.

> I did explain to Mr. Lerma that the maximum sentence he could receive as to Counts 1 thru 7 was 120 months in prison, but that he could receive Life in prison for Count 8.

> We also discussed how the advisory Federal Sentencing Guidelines operated and how some provisions therein could affect his total score. I advised that the Judge could sentence him to more or less time than that which the guideline score would recommend. I am certain that Mr. Lerma, prior to his plea of guilty, understood that there was no deal to limit his total sentence to 120 months, nor to any other amount of time.

> After sentencing, I filed a Motion for Reconsideration and continued to speak with the Government about the possibility of a Rule 35 motion being filed.

> I then filed Notice of Appeal on Mr. Lerma's behalf, and a Motion to
> Withdraw as Counsel.

*Id.* at 1-2 (formatting altered).

Benton's evidentiary hearing testimony also credibly contradicted Lerma-Pichardo's allegations. *See* Dkt. No. 45 at 5-26. In relevant part, Benton testified as follows:

1. Benton reviewed the terms of the plea agreement he negotiated on Lerma-Pichardo's behalf with Lerma-Pichardo well before Lerma-Pichardo agreed to sign the plea agreement. Dkt. No. 45 at 9. Benton specifically explained the content of each paragraph of the plea agreement with Lerma-Pichardo. *Id.* at 10.

2. On the day Lerma-Pichardo entered his guilty plea, the parties informed United Magistrate Judge Ronald Morgan that they had agreed to some additional terms that were not discussed in the written plea agreement. Dkt. No. 45 at 10-11. Specifically, the Government had agreed not to pursue certain potentially applicable sentencing enhancements. *Id.* Upon receiving this information, Judge Morgan asked the parties to write the additional terms into the plea agreement. *Id.* The parties complied, and Benton explained these terms to Lerma-Pichardo. *Id.* at 10.

3. Despite its other concessions, the Government did not agree to refrain from seeking a sentencing enhancement related to allegations that Lerma-Pichardo caused serious bodily injury to a hostage. Dkt. No. 45 at 11-12. This was expected as the Government had made its determination to pursue this enhancement "very clear." *Id.* Benton and Lerma-Pichardo agreed that, strategically, it would be best not to

object to the proposed enhancement because, if they did, the Government might produce Lerma-Pichardo's alleged victim, and her testimony might persuade Judge Olvera to give Lerma-Pichardo a longer sentence. *Id.* at 12-13.

> Mr. Lerma-Pichardo and I both agreed that we did not want the victim to be brought here for a sentencing hearing, which Ms. Cano said that they absolutely would do. I believe they went to Los Angeles to interview her. And both Mr. Lerma-Pichardo and I felt that if she were to testify, things would not go well for him. She had a very compelling statement that pretty much lined up exactly with, not exactly, but very, very similar to what several material witnesses had stated. That she was forcibly raped by Mr. Lerma-Pichardo. Particularly, I didn't really want her to take the stand and state when she began to pray that Mr. Lerma-Pichardo said, that your God can't help you now. I didn't feel that would go across well in front Judge Olvera. So, the strategy was that we did not object to that plus four, that Mr. Lerma-Pichardo admitted to having sexual relations with her, but that it was not a forcible rape. However, in the situation where someone's being held that they would not be able to consent either way.
>
> It was also noteworthy is that I want to say his name is Juan Carlos, but there was another co-defendant, the other male co-defendant that was his mother's boyfriend who had also had sex with this same victim. And he had received, who I want to say sentence of like 40 or 60 months. So, I was trying to at sentencing, get across that, yes, it was bodily injury because she could not have consented, but what he had done was not much different than what the other co-defendant had done, and he had been sentenced at much lower than what we anticipated Mr. Lerma-Pichardo getting. I think that was the correct strategy.

*Id.* (formatting altered, errors in original).

4.  Benton did not promise Lerma-Pichardo that the Government would refrain from seeking a serious-bodily-injury enhancement. Dkt. No. 45 at 15. To the contrary, Lerma-Pichardo knew that the Government would seek this enhancement because Benton had discussed it with him. *Id.* at 12-13, 15. Relatedly, Benton never told Lerma-Pichardo that he would receive a sentence of 10 years or less if he signed

the plea agreement. *Id.* at 21. Benton did tell him that "it was very unlikely that Judge Olvera would give him any more time than what the government was asking for, which was 235 months[,]" which was what he got. *Id.* at 23. Further, Benton informed Lerma-Pichardo that Judge Olvera was not bound by the terms of the plea agreement and could give him a longer sentence, or a life sentence. *Id.* at 23-25. Benton also recalled that, before Lerma-Pichardo entered his plea, Judge Morgan informed him that he could receive a life sentence. *Id.* at 26.

In addition to being consistent with his Affidavit, Benton's testimony was also consistent with the records from Lerma-Pichardo's criminal case. At his re-arraignment, Judge Morgan informed Lerma-Pichardo that he could receive a life sentence if he entered a guilty plea to Count 8 of the indictment. CR Dkt. No. 261 at 21. Lerma-Pichardo stated, under oath, that he understood. He also stated that Benton had provided him with the same information. *Id.* at 22, 56. Lerma-Pichardo additionally provided the following sworn testimony at his re-arraignment:

1. Benton explained the terms and conditions of his plea agreement, including the terms that were handwritten into the agreement at his re-arraignment. CR Dkt. No. 261 at 32, 40-41. Lerma understood the plea agreement and signed it voluntarily. *Id.* at 36-37, 40-41, 43. Other than the terms memorialized in the agreement, no one promised him anything in exchange for his guilty plea. *Id.*

2. He understood that the Court was not bound by the plea agreement and did not have to accept the recommendations the Government had agreed to make. CR Dkt. No. 261 at 41-42. He also understood that the Court could reject the

Government's recommendations without allowing him the chance to withdraw his guilty plea. *Id.* He understood that, as a result, he could end up with a sentence more severe than the sentence the Government agreed to recommend. *Id.* Benton had explained this possibility to him. *Id.* at 42. Similarly, he understood that the Court could impose a more severe sentence than what was recommended by the sentencing guidelines. *Id.* at 28-31.

3. With all this in mind, and having understood the charges against him, he wished to plead guilty to Counts 1-8. CR Dkt. No. 261 at 13-14, 43-44. This being his wish, he stated that he was pleading guilty voluntarily to Counts 1-8 because he was guilty. *Id.* at 46-65.

Lerma-Pichardo's signed plea agreement also supports Benton's testimony and undermines his own claims. The plea agreement does not include an agreement on the part of the Government to recommend a sentence of 10 years or less. *See generally* CR Dkt. No. 185. Instead, the agreement records the Government's agreement to recommend that Lerma-Pichardo receive a sentence "at the low end of the guideline" range applicable to him. *Id.* at 2. Additionally, the plea agreement notes that, in signing the plea agreement, Lerma-Pichardo understands that:

1. The maximum penalty for the offense charged in Count 8 is life imprisonment. CR Dkt. No. 185 at 1-2. Any "estimate of the possible sentencing range under the sentencing guidelines that" Lerma-Pichardo may have received from his "counsel, the United States or the Probation Office, is a prediction, not a promise,"

and as such it did not induce his guilty plea and "is not binding on the United States, the Probation Office or the Court." *Id.* at 6.

2. "[T]he Court has the authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which ]Lerma-Pichardo] pleads guilty[.]" CR Dkt. No. 185 at 7. The "sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines." *Id.* The parties' positions concerning the application of the Sentencing Guidelines do not bind the Court. *Id.* Neither the imposition of a maximum sentence, nor the imposition of consecutive sentences will serve as a basis to allow Lerma-Pichardo to withdraw his guilty plea. *Id.*

3. "No promises or representations" were made by the United States "except as set forth in writing in [the] plea agreement." CR Dkt. No. 185 at 8. The plea agreement was not the result of threats, and Lerma-Pichardo has agreed to plead guilty voluntarily because he is guilty. *Id.*

Finally, some of Lerma-Pichardo's evidentiary hearing testimony also undercuts his claims. In relevant part, Lerma-Pichardo testified as follows:

1. Benton informed him that Judge Olvera could reject the plea agreement and sentence him however he liked. Dkt. No. 45 at 31. Benton informed him that he could get life in prison for the offense charged in Count 8. *Id.* at 32. Before taking his guilty plea, Judge Morgan went over the plea agreement with him. *Id.* at 37. Judge Morgan also told him that Judge Olvera could reject the plea agreement and give him a sentence longer than what the Government recommended. *Id.* at 44-45.

2. He knew his written plea agreement did not contain a promise that he would only receive a sentence of 10 years or less. Dkt. No. 45 at 39. Instead, he knew his plea agreement stated that, in exchange for his guilty plea to Counts 1-8, the Government would agree "to move for a reduction or credit for acceptance of responsibility," and would recommend a sentence at the low end of the guidelines applicable to him. *Id.* Prior to entering his guilty plea, he had testified under oath that he knew the written plea agreement constituted the entire agreement between himself and the Government. *Id.* at 43-44. He also testified that no one had made any promises to induce him into signing the plea agreement. *Id.* at 45.

3. Prior to entering his guilty plea, he had testified that he was satisfied with Benton's advice. Dkt. No. 45 at 37. Aside from Benton, and prior to entering his guilty plea, he did not recall anyone else from Benton's office telling him he would only get a maximum of 10 years in prison if he signed the plea agreement. *Id.* at 30.

This above-summarized testimony was credible and consistent with the other record evidence before the Court. Further, although Lerma-Pichardo did reiterate the assertions he made in his § 2255 Motion and Motions in Support, he did not elaborate upon his assertions or provide any additional factual support for his claims. *See, e.g.*, Dkt. No. 45 at 28-31, 34-36, 41, 45. Perhaps more critically, Lerma-Pichardo failed to credibly explain how he could have been induced into pleading guilty with promises of a lighter sentence when he also knew that Judge Olvera would not be bound by those promises. Lerma-Pichardo's testimony that he was induced into pleading guilty with promises of a sentence of 10 years or less was not credible.

Viewed cumulatively, the record evidence indicates that, prior to signing his plea agreement and pleading guilty, Lerma-Pichardo knew he could receive a sentence of up to life in prison, regardless of what the Government agreed to recommend.

Lerma-Pichardo has produced no evidence to alter these conclusions. At the evidentiary hearing, Lerma-Pichardo sought to rely upon a recording of a call between himself and a former employee in Benton's office which occurred after he was sentenced. *See* Dkt. No. 45 at 18-21. According to his counsel, this recording documented: (1) Lerma-Pichardo's statement the Government had not respected the plea agreement; (2) Lerma-Pichardo's statement that the parties had agreed he would not receive a sentence in excess of 10 years; and, (3) the former employee's statement that Lerma-Pichardo's characterization of the agreement was correct. *Id.* at 19. The Government objected on the grounds of relevance. *Id.* at 20-21. The Court sustained the objection because the recording took place after Lerma-Pichardo entered his plea, and the conversation was not between himself and his attorney. *Id.*

Still, even presuming that the characterization of the call provided by Lerma-Pichardo's counsel was accurate, which the Court does, the recording would not alter the outcome in this case. At a minimum, the recording does not undermine Lerma-Pichardo's own in-court testimony regarding Judge Olvera's discretion to reject the plea agreement, and it does not outweigh the other above-summarized evidence which contradicts his claims. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject

to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Lerma-Pichardo has not provided any factual support or other evidence to support his allegations. As such, Lerma-Pichardo's has not shown that his plea agreement or guilty plea were involuntarily induced, nor has he shown that Benton provided him with prejudicial ineffectiveness assistance. His claims, therefore, lack merit and should be dismissed. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test).

## V. Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Stated differently, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Lerma-Pichardo has not made a substantial showing of the denial of a constitutional right.

## VI.  Recommendation

It is recommended that the Court: (1) **GRANT** the Government's Motion for Summary Judgment; (2) **DENY** the requests for relief contained in Lerma-Pichardo's § 2255 Motion and Motions in Support; (3) **DECLINE** to issue a certificate of appealability; and (4) **DIRECT** the Clerk of the Court to close this case.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

SIGNED on this _____ day of October, 2019.

Ignacio Torteya, III
**United States Magistrate Judge**